FILED
JUL 23 2025
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 25-CR-01544-EG |
| ALEXANDRO CONTRERAS | § § § | |

**DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE ERNEST GONZALEZ, UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS:

Defendant Alexandro Contreras, by and through counsel, respectfully files this Motion to Dismiss the Information as a matter of law. The Information alleges that Mr. Contreras "intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered" with a U.S. Customs and Border Protection officer who was engaged in his official duties. ECF Doc. No. 7. Under the facts of this case, the government cannot present legally sufficient evidence that Mr. Contreras *forcibly* committed any act. Alternatively, if the meaning of the term "forcibly" is so broad that it encompasses Mr. Contreras's behavior in this case, then the statute is unconstitutional as applied to Mr. Contreras because it infringes on his First Amendment rights.

Mr. Contreras, therefore, moves to dismiss the Information.

I.  **Background**

Mr. Contreras is charged by Information with forcibly resisting, opposing, impeding, intimidating, and interfering with a U.S. Border Patrol Agent in violation of 18 U.S.C. § 111(a)(1). On June 7, 2025, Mr. Contreras arrived on foot at the Del Rio Port of Entry International Bridge in Del Rio, Texas, and provided his birth certificate as proof of identification. Mr. Contreras repeatedly demanded that CBP officers hurry up and refused to answer questions.

Approximately two minutes after Mr. Contreras provided his birth certificate, several officers surrounded Mr. Contreras and instructed him to "calm down."[1] Border Patrol Officer Jose Guerra asked Mr. Contreras where he is from, and Mr. Contreras turned and stepped towards BPO Guerra and yelled, "West Texas." BPO Guerra then shoves Mr. Contreras back.





---

[1] The entire incident is captured on surveillance video, which is attached as an exhibit to this motion.

Mr. Contreras then yells "come on, come on" as BPO Guerra pushes him one more time. BPO Guerra then instructs Mr. Contreras to turn around and place his hands on a counter so he can be handcuffed. Mr. Contreras complies. Mr. Contreras is then taken in handcuffs to the intake area.

II.     **Legal Standard**

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

Here, the issue is a pure question of law in the presence of undisputed facts. The incident was captured entirely on surveillance video. Mr. Contreras, therefore, moves this Court to dismiss the Information because none of Mr. Contreras's acts were committed with the requisite "force."

III.    **Argument**

a. *Mr. Contreras did not act with the requisite force*

Section 111 provides, in relevant part, that whoever:

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111(a) and (b).

The Fifth Circuit has held that § 111 creates "three separate offenses: (1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous weapon." *United States v. Williams*, 602 F.3d 313, 316 (5th Cir. 2010). Relevant here is simple assault, which is a misdemeanor offense. *Id.* Simple assault is defined as an attempted or threatened battery. *United States v. Hazlewood*, 526 F.3d 862, 865 (5th Cir. 2008). Furthermore, "the term "forcibly" modifies all of the acts rendered unlawful by § 111(a)(1)." *Id.*

As the Fifth Circuit has noted, § 111 contains an ambiguity with respect to simple assault. As the Court framed the issue in *Williams*:

> the statute appears to outlaw several forms of conduct directed against federal officers, only one of which is assault, but then distinguishes between misdemeanors and felonies by reference to the crime of assault. The difficulty that has confronted other courts is whether conviction for the non-assaultive conduct apparently outlawed by the statute (*i.e.,* "resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]" with a federal officer) requires, at a minimum, conduct that amounts to "simple assault." To put the question another way, can a defendant be convicted of forcible resistance under this statute without having committed an underlying assault?

*Williams*, 602 F.3d at 316. The Fifth Circuit ultimately held that a misdemeanor conviction for any of the non-assaultive acts listed in § 111(a)(1) does not require underlying assaultive conduct. *Id.* at 317-18.

While a defendant need not have exhibited "underlying assaultive conduct" or have made physical contact, in order to be convicted a defendant must still have acted "forcibly." *Hazlewood*, 526 F.3d at 865. Force is, therefore, a necessary element of any § 111 violation. The statute does not, however, define "forcibly."

The Fifth Circuit has not explicitly adopted a definition of "forcibly" as used in 18 U.S.C. § 111. In *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court examined the various definitions of "force" in its attempt to define "physical force" in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i). Because the provision did not define "physical force," the Court gave the phrase its "ordinary meaning." 559 U.S. at 138. As relevant here, the Supreme Court recognized that "'force' has a number of meanings." *Id.* The Court noted that "force" generally means [s]trength or energy; active power; vigor; often an unusual degree of strength or energy," "[p]ower to affect strongly in physical relations," or "[p]ower, violence, compulsion, or constraint exerted upon a person." *Id.* The Court also noted that Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing." *Id.* "All of these definitions suggest a degree of power that would not be satisfied by the merest touching." *Id.*

A court within this district has considered whether certain acts were deemed with sufficient "force" such that a conviction under § 111(a)(1) could be upheld. In *Sophin v. United States*, the Court evaluated a scenario where the defendant refused to answer citizenship-related questions and drove away from the inspection area. 153 F.Supp.3d 956, 959-61 (W.D. Tex. 2015). The Court ruled:

> [T]he evidence presented at trial is insufficient to uphold Sophin's misdemeanor conviction for forcibly interfering with Agent Mossman. Assuming Sophin's act of driving his car constituted "power, violence, or pressure," Sohpin did not drive toward Agent Mossman, or otherwise direct any power, violence, or pressure against Agent Mossman. Thus, under this definition, a rational fact finder could not have found beyond a reasonable doubt that Sophin "forcibly" interfered with Agent Mossman.

*Id.* at 969.

Here, just as in *Sophin*, there is no evidence Mr. Contreras committed any of the required acts "forcibly." Using the ordinary meaning of "force," there is no evidence Mr. Contreras committed any of the prescribed acts with the requisite "power, violence, or pressure directed against" any Border Patrol officer. Where the Fifth Circuit has upheld convictions under 18 U.S.C. § 111, the defendant acted with power or violence towards an officer. *See, e.g., United States v. Williams*, 602 F.3d 313, 318 (5th Cir. 2010) (finding defendant "forcibly ... resist [ed]" federal officers because she swung her arms for the specific purpose of resisting the officers' attempts to handcuff her). Here, while Mr. Contreras did yell for officers to "hurry up" and yelled "West Texas" in response to BPO Guerra's question of where he was from, Mr. Contreras never directed any power, violence, or pressure towards any officer. He did not swing his arms towards any officer, not when BOP Guerra pushed him two times. Once Mr. Contreras was told that he would be arrested without delay he put his hands where he was instructed to put them. Officers had no issue putting him in handcuffs as he did not resist. None of Mr. Contreras's actions rise to the level of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with any officer.

      b. ***Alternatively, if the meaning of the term "forcibly" is so broad to encompass Mr. Contreras's behavior then it is unconstitutional as applied to Mr. Contreras because it infringes on his First Amendment rights***

The First Amendment states in part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Indeed, the First Amendment protects speech even when the subject or manner of expression is uncomfortable or unconventional. The "bedrock principle underlying the First Amendment" is "that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "It is axiomatic that the government may not regulate speech based on its

substantive content or the message it conveys." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Rather, a "hallmark" of free speech is "to allow 'free trade in ideas' - even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). "Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)). Furthermore, the Supreme Court has suggested that certain recognized exceptions to the First Amendment such as the "fighting words" exception, might require an even "narrower application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Id.* at 462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Lewis, J., concurring).

If the Court were to interpret the term "forcibly" so broadly as to encompass Mr. Contreras's conduct, the statute would criminalize constitutionally protected speech. If the Court were to find that Mr. Contreras's acts of yelling "west Texas" when asked where he was from and yelling "come on, come on" at BPO Guerra are forcible acts as required under 18 U.S.C. § 111, then the statute would criminalize speech. When statutes criminalize speech, they can only criminalize statements that are not protected by the First Amendment. *See United States v. Goltz*,

No. 23-10851, 2024 WL 3355355, at *1 (5th Cir. July 10, 2024). While there are limited classes of speech that not protected under the First Amendment, *see Counterman v. Colorado*, 600 U.S. 66, 73-74 (2023), Mr. Contreras's statements do not fall within any of the established exceptions.

Criminalizing Mr. Contreras's conduct in this case would effectively eliminate the "forcible" requirement and would criminalize speech protected by the First Amendment. Therefore, Mr. Contreras moves the Court to find the statute unconstitutional as applied.

## IV. Conclusion

For the foregoing reasons, the Court should dismiss the information.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ NITYA MORALES VAZQUEZ
Assistant Federal Public Defender
Western District of Texas
2205 Veterans Blvd., Ste. A-2
Del Rio, Texas 78840
(830) 703-2040
(830) 703-2047 (FAX)
Bar Number: Puerto Rico 16995

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2025, I electronically filed the foregoing Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Ashley Ellis-Dotson
Assistant U.S. Attorney
111 E Broadway St., Ste. A300
Del Rio, TX 78840

/s/ NITYA MORALES VAZQUEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 25-CR-01544-EG |
| ALEXANDRO CONTRERAS | § § § § | |

**EXHIBIT LIST**

**Exhibit A** – Surveillance Video Pedestrian Processing Center



**United States v. Contreras**
**Case Number: 2:25-cr-01544-EG**
**Exhibit A**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | NO. 25-CR-01544-EG |
| ALEXANDRO CONTRERAS | § § § | |

### ORDER

On this date, the Court considered Defendant's Motion to Dismiss. The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE **ORDERED** THAT the Defendant's Motion to Dismiss is hereby **GRANTED.** The Information is HEREBY DISMISSED.

SIGNED this _____ day of _____, 2025.

_____
ERNEST GONZALEZ
UNITED STATES DISTRICT JUDGE